**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ROSARIO, *et al.*,

Plaintiffs,

-against-

MY DEVICE, INC. D/B/A WHIZZ,

Defendant.
-------------------------------------------------------------X

**ORDER**

**24-CV-08701 (LGS) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Plaintiffs Marlene Rosario ("Rosario") and Camry Young ("Young") (collectively, "Plaintiffs") move the Court for sanctions against Defendant My Device, Inc. d/b/a Whizz ("Defendant") for spoliation of electronically stored information ("ESI"). Plaintiffs move the Court to grant sanctions under Rule 37 of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiffs' motion for sanctions is **GRANTED** in part and **DENIED** in part.[1]

## I. BACKGROUND

### A. Procedural posture

On November 15, 2024, Plaintiffs filed their complaint against Defendant alleging violations of the Fair Labor Standards Act, the New York Labor Law, and Section 1981 of the Civil Rights Act of 1866. See Dkt. No. 1 ("Compl."). On February

[1] Pursuant to the August 19, 2025 referral of this case for General Pretrial (see Dkt. No. 54), this Court has the authority to order non-dispositive spoliation sanctions. See Dorchester Fin. Holdings Corp. v. Banco BRJ S.A., No. 11 Civ. 1529 (KMW), 304 F.R.D. 178, 180 (S.D.N.Y. 2014).

13, 2025, Plaintiffs filed a first amended complaint, which is the operative complaint in this action. Dkt. No. 26 ("FAC").

During the discovery period, Plaintiffs requested, without objection from Defendant, an extension of the discovery deadline regarding Defendant's spoliation of relevant video surveillance data and audit trail reports. See Dkt. Nos. 52, 53, 58. The Court granted this request, along with Plaintiff's request to file a Rule 37(e) sanctions motion.

On October 23, 2025, Plaintiffs filed their motion for sanctions. Dkt. Nos. 61–63. On November 6, 2025, Defendant filed its opposition. Dkt. No. 66–67. On November 13, 2024, Plaintiffs filed their reply. Dkt. No. 68. The Court considers the motion fully briefed.

**B. Relevant facts**

**a. Case background**

Because allegations from both the initial complaint and the FAC are relevant to resolve the instant motions, the Court considers both allegations. However, note that the allegations summarized are largely the same between the initial complaint and FAC.

Defendant is an e-bike rental service based in New York City. Initial Compl. ¶ 13; FAC ¶ 12. In September and August 2022, Defendant hired Plaintiffs Young and Rosario to work as Customer Service Representatives in one of Defendant's New York City stores. Initial Compl. ¶¶ 13, 16; FAC ¶¶ 12, 15.

The Complaint alleges that Defendant forced Plaintiffs to work through their 30-minute unpaid lunch breaks and "after clocking out for the day at the end of their shifts, without compensation." Initial Compl. ¶ 21; FAC ¶ ¶ 21, 25. The Complaint also asserts that Defendant "issued wage statements . . . listing fewer regular and overtime hours than those that were actually worked" and "falsely reported the number of hours worked by Plaintiffs." Initial Compl. ¶¶ 23, 25; FAC ¶ 26.

**b. Preservation of videos**

Promptly after the filing of the Complaint in November 2024, Defendant "endeavored to preserve all potentially relevant evidence," including "all relevant video surveillance footage." Dkt. No. 66; Dkt. No. 60 ("Efimenko Decl.") ¶¶ at 4–5. Defendant's in-house counsel, Yulia Shilova, directed Defendant's corporate representative, Elena Efimenko, to preserve those items, including relevant videos of Plaintiffs Rosario and Young working at Defendant's store. However, Defendant's in-house counsel did not tell Efimenko that these preservation requests were related to a lawsuit. See Dkt. No. 63-1 ("Efimenko Dep.") at 26:15–17; 28:3–15 (Efimenko: "The reason why we need[ed] to [arrange for preservation] is we had no idea. It's just a request.").

To facilitate the preservation of the video surveillance footage, on November 24, 2024—two weeks after the instant suit was filed—Defendant hired Nurayim Bakytzhan, an independent contractor based in Kazakhstan, to preserve the relevant videos. Efimenko Decl. at ¶ 6. Bakytzhan "primarily focused on downloading and preserving snippets of video and/or screenshots confirming when Plaintiffs arrived to

work, when they left work, and when they took their meal breaks." Dkt. No. 66 (citing Efimenko Decl. at ¶ 8).

Defendant did not provide Bakytzhan any company-owned equipment. Efimenko Dep. at 73:9–16. Instead, and pursuant to Bakytzhan's offer letter and Contractor Agreement, Bakytzhan used her personal computer and personal email account to perform her duties. Dkt. No. 63-3. For instance, Bakytzhan downloaded the relevant videos of Rosario and Young onto her personal consumer Gmail account. Dkt. No. 63-4 at 6–7. Defendant asserts that Bakytzhan downloaded and stored the relevant videos of both Young and Rosario from November 24, 2024 through January 7, 2025 (when Plaintiffs stopped working for Defendant). Dkt. No. 66 (citing Efimenko Decl. at ¶ 9).

Defendant provides no additional facts regarding Defendants' efforts to comply with its preservation obligations of the relevant videos between January and April 2025. However, Defendant asserts that in April 2025—when Plaintiffs propounded their first discovery request—Defendant's in house counsel and corporate representative discovered that "nearly all videos and/or screenshots previously stored by Bakytzhan of [Plaintiff] Rosario were missing" from Bakytzhan's Google Drive folder. Dkt. No. 66 (citing Efimenko Decl. at ¶ 10). The videos of Plaintiff Young were still on Bakytzhan's Google Drive and were produced to Plaintiff. Id.

While Defendant fails to specify when exactly it began performing recovery efforts, Defendant asserts it checked Bakytzhan's Google folder, contacted Night Owl (the company responsible for recording and initially storing Defendant's video

footage), and reached out to Google support to recover the lost Rosario videos to no avail. Id. (citing Efimenko Dep. at 91:13–18). However, the record is clear that Defendant sat on its hands and waited until September 2025—five months after discovering the spoliation—before attempting a file recovery through Google. Id.

Further, rather than promptly inform Plaintiffs that the videos of Rosario were missing, Defendant withheld this information for nearly five months. See Dkt. No. 52-1 at 2-4; Dkt. No. 63-1 at 89. It was not until August 15, 2025, when Plaintiffs requested Defendant produce the video footage in response to their April 2025 First Set of Requests for Production, that Defendant informed Plaintiff that several of the requested videos were deleted. Dkt. No. 52-1 at 2, 4. Defendant explained to Plaintiffs that "it endeavored to preserve all relevant videos and directed an employee to store them on a Google drive," but that "when that employee left the company, the Gmail account for such employee was deactivated, which inadvertently deleted all of the Google drive data, including the remaining videos." Dkt. No. 52-1. Defendant also made this representation to the Court. See Dkt. No. 53.

However, when ordered to provide a sworn declaration explaining the spoliation of the Rosario videos by this Court, Defendant's narrative changed. Defendant admitted that its previous representation to the Court was "inaccurate," and that the person responsible for downloading the videos was always independent contractor Bakytzhan. Efimenko Decl. ¶¶ 6, 13. Defendant confirmed that, contrary to Defendant's previous assertions that the person responsible for the videos had left the company, Bakytzhan still worked with the company and her Google account was

never deactivated. Id. Defendant contends "it is not aware" of the cause of the spoliation. Id. at ¶ 12.

**c. Audit trails**

Plaintiffs also assert that Defendant failed to preserve the "version history" audit trails from its timekeeping system, Gusto ("audit trails"). Dkt. No. 62 at 6. Plaintiff requested these audit trails from Defendant in August 2025—9 months after the filing of the instant action. Dkt. No. 66. Defendant attempted to download the requested Gusto audit trail reports, but "learn[ed] for the first time" that audit trails pre-dating 2025 were unavailable, as Gusto only maintains archives of records for six months. Id. at 3. Defendant did, however, produce all available audit trail reports to Plaintiff.

## II. LEGAL STANDARD

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

Rule 37(e) of the Federal Rules of Civil Procedure specifically addresses spoliation of ESI and provides that "[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may, on a finding of prejudice, "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). However, on a "finding that

the party acted with the intent to deprive another party of the information's use in the litigation[,]" the court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

Rule 37(e) requires a three-part analysis:

> The first is to decide if the rule applies at all – that is, if a party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.' Fed. R. Civ. P. 37(e).
>
> If so, then the second step is to decide if there has been 'prejudice to another party from loss of the information,' in which case the Court 'may order measures no greater than necessary to cure the prejudice.' Fed. R. Civ. P. 37(e)(1).
>
> Lastly, the third step to consider – regardless of prejudice to any other party – is whether the destroying party 'acted with the intent to deprive another party of the information's use in the litigation,' in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 14 Civ. 2542 (VSB) (SLC), 341 F.R.D. 474, 521-22 (S.D.N.Y. 2022) (citation omitted).

## III. DISCUSSION

The Court addresses each of the three steps of the Rule 37(e) analysis below.

### A. Duty to preserve and reasonable steps

#### a. Duty to preserve

The obligation to preserve evidence arises when "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001). Although litigants do not have to keep every document within their possession, "[they are] under a duty to preserve what [they know], or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." Zubulake v. UBS Warburg LLC, No. 02 Civ. 1243 (SAS), 220 F.R.D. 212, 217 (S.D.N.Y. 2003). Thus, the duty to preserve arises "when a party should have known that the evidence may be relevant to future litigation." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998). "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Treppel v. Biovail Corp., No. 03 Civ. 3002 (PKL) (JCF), 249 F.R.D. 111, 118 (S.D.N.Y. 2008) (citing Zubulake, 220 F.R.D. at 218 ). Relevance, for purposes of Rule 37(e), "is 'an extremely broad concept.'" Orbit One Commc'ns, Inc. v. Numerex Corp., Nos. 08 Civ. 0905 (LAK) (JCF), 08 Civ. 6233 (LAK)

(JCF), 08 Civ. 11195 (LAK) (JCF), 271 F.R.D. 429, 436 (S.D.N.Y. 2010) (quoting Condit v. Dunne, No. 02 Civ. 9910 (PKL), 225 F.R.D. 100, 105 (S.D.N.Y. 2004)).

Here, Defendant concedes it had a duty to preserve the now-lost Rosario videos at issue. As such, the Court's analysis focuses on whether the scope of Defendant's preservation duties covered the Gusto timekeeping audit trail reports. Dkt. No. 62 at 2.

Plaintiff argues there was a duty to preserve the audit trail reports of Plaintiffs' time records, as it would show "whether managers were electronically reducing Plaintiffs' recorded hours." Id. at 14. Defendant counters that it did not have a duty to preserve the audit trail reports at the time the Complaint was filed because the "the Complaint does not allege that Plaintiffs were undercompensated as a result of edits made to their time entries."[2] Dkt. No. 66 at 17. Instead, Defendant contends that its duty to preserve arose when Plaintiffs requested the production of these reports for the first time in August 2025—10 months after the lawsuit was filed. Id. at 18. In compliance with its discovery obligations, Defendants attempted to obtain the audit trail reports from Gusto and learned that "Gusto does not maintain those records for more than 6 months." Id. As such, Defendant produced the records available at that time. Id.

The Court agrees that Defendants had no duty to preserve the Gusto audit trail reports at the time the initial complaint was filed. While the initial complaint

---

[2] The Court notes that the FAC alleges similar facts as the initial complaint with respect to the above allegations.

alleges Defendant "routinely issued wage statements . . . listing fewer regular and overtime hours than those that were actually worked" and "fail[ed] to report all hours employees were required to work after clocking out" (Initial Compl. ¶ 23), the initial complaint asserts that the wage theft occurred as a result of *off-the-books* work. For instance, by forcing Plaintiffs to work through their 30-minute unpaid lunch breaks and after clocking out for the day at the end of their shifts Id. at ¶¶ 22–23. The initial complaint contains no allegations that Defendant doctored time keeping records in the system to underpay Plaintiff. Therefore, at the time of the filing of the complaint, there was no duty for Defendants to preserve these audit trail reports.

Thus, the Court finds that an objective party "should have known that the evidence may be relevant to future litigation" when Plaintiffs propounded those discovery requests for the first time in August 2025. See Fujitsu Ltd., 247 F.3d at 436. Defendant therefore did not have a duty to preserve Plaintiff's Gusto audit trail reports until August 2025.

**b. Reasonable steps**

Once the duty to preserve attaches, a party and its counsel must "take reasonable steps to preserve" relevant evidence. See Fed. R. Civ. P. 37(e)(1). When a party has notice that evidence is relevant to litigation, "it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." Lokai Holdings LLC v. Twin Tiger USA LLC, No. 15 Civ. 9363 (ALC) (DF), 2018 WL 1512055, at *11 (S.D.N.Y. Mar. 12, 2018) (quotations omitted). Rule 37(e), however, "does not call for perfection." Id. (quoting

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). "The advisory committee's notes to the 2015 amendments to Rule 37(e) emphasize that courts should consider an individual party's 'sophistication' and resources, and state that '[a] party may act reasonably by choosing a less costly form of information preservation, if it is substantially as effective as more costly forms.'" Id.

Further, counsel for a party with a duty to preserve evidence is required to "oversee compliance with [a] litigation hold" and "become fully familiar with [their] client's document retention policies." Id. (quotations omitted). Counsel to a party with a duty to preserve "must also 'take affirmative steps to prevent inadvertent spoliation.'" Europe v. Equinox Holdings, Inc., No. 20 Civ. 7787 (JGK) (KHP), 592 F. Supp. 3d 167, 177 (S.D.N.Y. 2022) (quotations omitted). These steps include "identify[ing] all sources of potentially relevant evidence and implement[ing] a 'litigation hold' suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence." Skyline Steel, LLC v. PilePro, LLC, No. 13 Civ. 8171 (JMF), 101 F. Supp. 3d 394, 408 (S.D.N.Y. 2015) (quoting R.F.M.A.S., Inc. v. So, No. 06 Civ. 13114 (VM)(MHD), 271 F.R.D. 13, 24 (SDNY 2015). The "reasonable steps" inquiry has been equated to "roughly a negligence standard." Leidig, 2017 WL 6512353, at *10. "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." Zubulake, 220 F.R.D. at 220.

At the outset, Defendant asserts it took reasonable steps to preserve the spoliated Rosario videos, including issuing a litigation hold. Plaintiff argues that

Defendant did not issue a proper litigation hold because Defendant's in-house counsel failed to explain to its corporate representative that these preservation directives were related to a lawsuit. See Efimenko Dep. at 26:15–17; 28:3–15. But Rule 37e "does not call for perfection." Lokai, 2018 WL 1512055, at *11. Considering Defendant's small size and limited resources (see Dkt. No. 66 at 10), the Court finds that Defendant properly issued a verbal litigation hold to ensure the preservation of the relevant video footage of Plaintiffs. See Efimenko Decl. at ¶¶ 4–5. For instance, two weeks after Plaintiff filed suit, Defendant directed its corporate representative to preserve specific documents related to the action, and even hired independent contractor Bakytzhan to preserve relevant video footage of Plaintiffs Rosario and Young working at Defendant's store.

Nevertheless, Defendant's subsequent actions constitute a failure to take reasonable steps to preserve the relevant Rosario videos. First, because Defendant concedes that the Rosario videos were destroyed, Defendant is at a minimum, negligent. See Zubulake, 220 F.R.D. at 220 ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent.").

Second, defense counsel failed to "oversee compliance" with the litigation hold notices, failed to "[monitor] the [clients']" efforts to retain the documents subject to the hold, and failed to become "fully familiar" with the clients' document retention policies and "data retention architecture," as required by law. Charlestown Cap. Advisors, LLC v. Acero Junction, Inc., No. 18 Civ. 4437 (JGK) (BCM), 337 F.R.D. 47, 62 (S.D.N.Y. 2020) (quotations omitted). For one, it is clear that defense counsel was

not at all familiar with the video retention efforts or the data retention architecture of Defendant with respect to the now spoliated videos. Indeed, defense counsel initially represented, to both the Court and Plaintiffs, that the videos were deleted because "when that employee left the company, the Gmail account for such employee was deactivated, which inadvertently deleted all of the Google drive data, including the remaining videos." Dkt. Nos. 52-1, 53. That Defendant later reneged its initial representation as "inaccurate" and updated the record that the cause of the spoliation was unknown does not save the day.

As such, the Court finds that Defendant failed to take reasonable steps to preserve the relevant videos of Plaintiff Rosario.

**c. Prejudice**

After the threshold requirements have been satisfied, Rule 37(e)(1) "permits the imposition of sanctions only when there is 'prejudice to another party from loss of the information.'" Lokai Holdings, 2018 WL 1512055, at *12 (quoting Leidig, 2017 WL 6512353, at *12). Prejudice may be found if a moving party shows that spoliated evidence "would be helpful to [a party] in connection with establishing . . . their . . . claims." Doubleline Cap. LP v. Odebrecht Fin., Ltd., No. 17 Civ. 4576 (GHW) (BCM), 2021 WL 1191527, at *7 (S.D.N.Y. Mar. 30, 2021); see also Medcenter Holdings Inc. v. Web MD Health Corp., No. 20 Civ. 53 (ALC) (GWG), 692 F. Supp. 3d 81, 98, 100 (S.D.N.Y. 2023) (holding that spoliation of evidence prejudices a party if it "deprive[s] [a party] of the ability" to thoroughly argue or value their claim). A moving party "need not establish that a smoking gun" was spoliated. Karsch v. Blink Health Ltd.,

No. 17 Civ. 3880 (VM) (BCM), 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019) (quotations omitted). Instead, it is sufficient for a party to "plausibly suggest[] that the spoliated ESI *could* support the moving party's case." Id. (quotations omitted) (emphasis added). Further, spoliation of evidence will not be found if the evidence can be "'restored or replaced through additional discovery.'" In re Keurig, 341 F.R.D. 474 at 494 (quoting Fed. R. Civ. P. 37(e)).

Defendant argues that Plaintiffs will not be prejudiced by the loss of the video evidence because "[Plaintiffs] have not—and cannot—demonstrate that the lost evidence would affirmatively support Plaintiffs' claims." Dkt. No. 66 at 19. But that is not the standard. Instead, Plaintiff need only show that the evidence *could support* their case.

There is no doubt Plaintiffs have met their burden here. Given the video cameras in Defendant's store captured Plaintiff Rosario during work hours, it is "plausible" that the missing footage of Rosario would assist the trier of fact in determining whether Defendant forced Rosario to "stay[] on site to complete tasks after clocking out and routinely work[] through unpaid meal breaks to handle customer needs." Dkt. No. 62 at 2. See Perez v. Molina, No. 23 Civ. 801 (JHR) (BCM), 2025 WL 605478, at *5 (S.D.N.Y. Feb. 25, 2025). (holding that the loss of video footage prejudiced plaintiff because it "was at least 'plausible' that the missing footage would assist plaintiff ).

Lastly, based on the information before the Court, it is undisputed that videos of Rosario cannot be entirely restored or replaced through other means. As such, Plaintiffs have demonstrated they are entitled to sanctions pursuant to Rule 37(e)(1).

**d. Intent to deprive**

Because Plaintiffs move for sanctions under Rule 37(e)(2), the Court now determines whether Defendants "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "[A] party seeking sanctions under Rule 37(e)(2) must establish the requisite elements – including that the party act with 'intent to deprive' – by a preponderance of the evidence." Hoffer v. Tellone, 128 F.4th 433, 440 (2d Cir. 2025). Such a finding is a necessary predicate to the imposition of the "particularly harsh" sanctions permitted under subsection (e)(2). A finding of intentional spoliation requires more than "the intent to … destroy[] ESI but rather the intent to actually deprive another of evidence." Leidig, 2017 WL 6512353, at *11. "A party's acting negligently or knowingly will not suffice to justify the sanctions enumerated in Rule 37(e)(2)." Hoffer, 128 F.4th at 438. In determining whether a party acted with the intent to deprive, courts have considered the following factors set out in Moody v. CSX Transportation:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

Charlestown, 337 F.R.D. at 67 (quoting Moody v. CSX Transportation, Inc., 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017)).

Plaintiff concedes there is no direct evidence of intent but argues that Rule 37(e)(2) sanctions are warranted because the circumstantial evidence "supports an inference of willfulness." Dkt. No. 62 at 13. Plaintiff points to the following to infer intent: (1) Defendant's failing to issue a formal litigation hold, (2) Defendant entrusting a foreign, independent contractor to download the relevant videos on her personal Gmail account (as opposed to a company-prescribed account), (3) Defendant waiting more than five months to recover the lost ESI after learning the Rosario videos were missing, and (4) Defendant's shifting its story regarding the cause of the spoliation. Dkt. No. 62 at 13.

The Court agrees with Plaintiff that Defendant's handling of the now-spoliated, irrecoverable Rosario videos is alarming and grossly negligent. However, based on the record, Defendant's actions do not rise to the level of being "so stunningly derelict" that it is akin to an intent to deprive under the assessment of the Moody factors. While the first Moody factor is met, Plaintiff's case is less strong when assessing the remaining three factors. For instance, in regard to the second factor, there is no evidence that Defendant performed an affirmative act to spoliate the Rosario videos. All that is in the record, is that the Rosario videos were at some point saved by independent contractor Bakytzhan and were later lost due to an unknown cause. Third, while Defendant's actions were far from ideal, Defendant took steps towards preserving the videos; for instance, by hiring Bakytzhan to download and

save the relevant videos of Plaintiffs Rosario and Young. Lastly, as to the fourth factor, the loss of the Rosario videos can credibly be explained as not involving bad faith. For example, Defendants' decision to (1) entrust independent contractor Bakytzhan's to save the relevant videos on her own personal Gmail account and (2) waiting five months before attempting to recover the lost Rosario videos can credibly be explained as involving gross negligence rather than bad faith. See Charlestown, 337 F.R.D. at 51–52, 67 (finding no intent under Rule 37(e)(2) even though counsel "conceal[ed] the fact of spoliation months [and] made misleading representations to his opponent – and to the Court").

While a Court may find intent based on circumstantial evidence, "here, the presented evidence is capable of more than one interpretation, and this Court will not make a finding of intent to deprive on the basis of suspicion alone." Lokai Holdings, 2018 WL 1512055, at *16. Thus, the Court finds no basis to conclude by a preponderance of the evidence, that Defendant spoliated the Rosario videos with an intent to deprive under Rule 37(e)(2).

**e. Choice of sanctions**

The Court now determines the appropriate sanctions under Rule 37(e)(1), which must be "no greater than necessary to cure the prejudice" to Plaintiff. Fed. R. Civ. P. 37(e)(1). While a court has "broad discretion in crafting a proper sanction for spoliation," a court should always aim to impose the least harsh sanction, designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced

party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" West, 167 F.3d at 779 (quoting Kronisch, 150 F.3d at 126); Slovin v. Target Corp., No. 12 Civ. 863 (HB), 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013).

Plaintiffs request the Court to "(a) preclude [Defendant] from offering evidence to rebut Plaintiffs' testimony regarding their hours worked and the alteration of their time records, (b) permit Plaintiffs to present evidence of the spoliation to the jury, and (c) award Plaintiffs their reasonable attorney fees and costs associated with this motion." Dkt. No. 62 at 21.

**i. Evidence of spoliation to jury**

By losing the relevant video footage of Plaintiff Rosario, Defendant improperly strengthened their case against Plaintiffs. While the Court finds that Defendant should not be precluded from introducing any evidence, Plaintiffs should be permitted to present evidence at an eventual trial regarding the spoliation of the Rosario videos. See Karsch, 2019 WL 2708125, at *27 (holding presentation of evidence at trial regarding spoliation sufficient to address the evidentiary imbalance created by a destroyed server containing relevant data).

**ii. Attorney fees**

Further, an award of Defendants' expenses, including attorney fees, is warranted under Rule 37(e)(1), which authorizes an award of attorney fees and costs to the moving party to the extent reasonably necessary to address any prejudice caused by the spoliation. Lokai Holdings, 2018 WL 1512055, at *9.

Defendant is directed to reimburse Plaintiffs for the attorney fees and costs incurred in performing discovery on the spoliation issue and briefing the instant motion for sanctions. "This remedy ameliorates the economic prejudice imposed" on Plaintiffs, "and also serves as a deterrent to future spoliation." CAT3, LLC v. Black Lineage, Inc., No. 14 Civ. 5511 (AT) (JCF), 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016). Plaintiffs' counsel is directed to provide Defendant's counsel with a breakdown of those fees and costs. If Defendant does not agree as to the amounts included, Defendant may file a letter requesting a conference with this Court to address any disputes in that regard.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs' sanctions motion is **GRANTED** in part and **DENIED** in part, and sanctions pursuant to Rule 37(e)(1) of the Federal Rules of Civil Procedure shall be imposed on Defendant, consistent with this order.

**The Clerk of Court is respectfully requested to close Dkt. No. 61.**

SO ORDERED.

DATED: New York, New York
September 15, 2026

Jennifer E. Willis

JENNIFER E. WILLIS
United States Magistrate Judge